1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 08-CR-00938-LHK |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL |
| JAMIE HARMON, | ) ) | |
| Defendant. | ) ) | |

Before the Court is a motion for a new trial brought by Defendant Jamie Harmon ("Harmon"). ECF No. 321. The government opposes the motion. ECF No. 325. Having considered the submissions of the parties, the evidence, and the relevant law, the Court hereby DENIES Harmon's motion for a new trial.

**I.      PROCEDURAL HISTORY**

On July 20, 2010, a jury found Jamie Harmon guilty of five counts of money laundering in violation of 18 U.S.C. § 1956(A)(i)(b)(i), but hung regarding her guilt on one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). ECF No. 146. On October 1, 2010, Harmon requested an evidentiary hearing regarding alleged misconduct by one of the jurors in her trial, Mark Porter. ECF No. 172. The government opposed Harmon's request. ECF No. 186.

United States District Court
For the Northern District of California

1   Harmon filed a reply. ECF No. 189. Judge James Ware granted Harmon's request, and summoned

2   Porter to testify at an evidentiary hearing. ECF Nos. 200 (Order granting request for evidentiary

3   hearing); 201 (Order summoning Mark Porter to come to the hearing). The evidentiary hearing was

4   held on April 1, 2011. ECF No. 213 ("April 2011 hearing transc."). After the hearing, the parties

5   filed supplemental briefing. ECF No. 217 (Harmon's brief); ECF No. 220 (government's brief).

6        Prior to the evidentiary hearing on juror misconduct, Harmon also filed a motion for

7   judgment of acquittal, or in the alternative, a new trial, raising various other issues, and the

8   government opposed. ECF No. 175 (motion); ECF No. 183 (opposition). On August 18, 2011,

9   Judge Ware issued an order that rejected Harmon's arguments in the acquittal motion and denied

10  Harmon's motion for acquittal, but nonetheless granted Harmon's motion for a new trial based on

11  an erroneous jury instruction that the Court identified sua sponte. ECF No. 227. The order

12  expressly declined to reach Harmon's claim of juror misconduct. *See id.* at 17 n.20. The

13  government subsequently appealed the order granting a new trial. ECF No. 236.

14       After Judge Ware's retirement, this case was reassigned to the undersigned judge for post-

15  trial litigation and sentencing on September 5, 2012. ECF No. 278. On August 13, 2013, the Ninth

16  Circuit issued a memorandum disposition reversing Judge Ware's grant of a new trial because "the

17  instructional error would not have warranted a new trial because it was harmless" in light of the

18  overwhelming evidence of Harmon's guilt. ECF No. 308 at 3. The Ninth Circuit did not reach the

19  issue of whether there was juror misconduct in Harmon's trial. *See id.*

20       On December 18, 2013, Harmon moved for a new trial based on Mark Porter's alleged

21  juror misconduct. ECF No. 321 ("Mot. 1"). On January 8, 2014, the government filed an

22  opposition. ECF No. 325 ("Opp'n 1"). Harmon did not file a reply. The Court held an evidentiary

23  hearing on this issue on January 24, 2014. ECF No. 335 (evidentiary hearing transcript, hereinafter

24  "Transc."). After the hearing, the parties filed supplemental briefing. ECF No. 324 (government's

25  brief, hereinafter "Opp'n 2"); ECF No. 343 (Harmon's brief, hereinafter "Mot. 2").

26  **II.     FACTUAL BACKGROUND**

27       **A.     Mark Porter's Background and Criminal History**

28

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

*United States District Court*
For the Northern District of California

**United States District Court**

For the Northern District of California

1    Mark Porter served as a juror and the foreperson in Harmon's trial. At the 2014 evidentiary

2    hearing before this Court, Porter testified that he suffered from a long-term cocaine addiction in the

3    1980s and 1990s for about twelve years, Transc. at 52-53, but has "been clean" since around 1998

4    or 1999. *Id.* He also testified that he does not remember having a checking account in the 1990s, id.

5    at 46, and that for about ten or twelve years during the time of his drug addiction he was homeless,

6    for he was "living in the streets just making do the best [he] knew how." *Id.* at 53.

7    The record contains evidence that Porter has a criminal history consisting of four

8    convictions: (1) a 1994 state felony conviction for welfare fraud, Cal. Welfare & Institutions Code

9    § 10980(c)(2); (2) a 1982 state conviction for nonsufficient funds, Cal. Penal Code § 476a; (3) a

10   1980 state conviction for possession of a dangerous weapon, Cal. Penal Code § 12020(a); and (4) a

11   1980 state conviction for reckless driving, Cal. Vehicle Code § 23103. *See* ECF No. 186, Exhibits

12   B, C. The state court records for the latter three convictions have apparently been destroyed, *see*

13   Opp'n 2 at 6, but both Harmon and the government acknowledge that Porter was convicted of these

14   crimes. Opp'n 2 at 2, 5-6; Mot. 2 at 1. There is no record of whether these latter three convictions

15   were felonies or misdemeanors. *See* ECF No. 186, Exhibits B, C.

16   The record also reveals that Porter was charged with possession of a concealed weapon in

17   1989, and insufficient funds in 1994, but both charges were dismissed. ECF No. 186, Exhibit B at

18   3. Porter was also charged, but not convicted, of insufficient funds in 1982 while on probation. Id.[1]

19   He was also charged with three counts of perjury, which were subsequently dropped, in connection

20   with his 1994 welfare fraud conviction, *see id.*; ECF No. 186, Exhibit C at 1-3. Thus, Porter has a

21   total of six charges that did not lead to convictions.

22   **B.    Juror Questionnaires and Voir Dire Proceedings**

23   Prior to serving on the jury in Harmon's trial, Porter completed a "Juror Qualification

24   Questionnaire" on August 28, 2009. ECF No. 172, Exhibit B (hereinafter "juror questionnaire").

25   Porter checked the "yes" box with respect to question six, which asked whether he had been

26   "convicted . . . of a state or federal crime for which punishment could have been more than one

27   year in prison." *Id.* at 1. The questionnaire explained that question six was controlled by the

28

---

[1] The record does not reveal whether this charge was dropped.

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

United States District Court

For the Northern District of California

"maximum penalty, and not the actual sentence." *See id*. at 2. The questionnaire also asked, in question number seven, if Porter's civil rights had been restored. *Id.* at 1. Porter answered "yes." *Id.* Question number seven also noted that if the answer to the question was "yes," the prospective juror should "explain [on page 2]." Id. Porter stated the following under the "Remarks" section on page 2 of the questionnaire: "June 1994? Not sure of date [sic] welfare fraud - four month [sic] in county jail - five year probation - Solano County Court. I can vote but cannot purchase a weapon until I have paid full restitution." *Id*. at 2.

Sometime before Harmon's trial began, Porter submitted another "Jury Information Form." *See* ECF No. 172, Exhibit D (hereinafter "jury information form"). Question number 17 on that form asked, "Have you been convicted of a state or federal crime punishable by imprisonment for more than year?" Mr. Porter checked the "no" box in response. *See id*. at 1.

On July 6, 2010, Judge Ware conducted jury voir dire for Harmon's trial. ECF No. 325 at 19-83 ("voir dire transcript"). Judge Ware asked the prospective jurors if they or a family member had been charged or convicted of a criminal offense:

> "I hate to bring up the subject of crime, but let's talk about crime. A crime is something that is -that society has declared to be unlawful. I exclude from this traffic offenses. So if any of you have been cited for traffic offenses, that's not a crime. But I do need, and I can ask you to come to the side-bar if you're embarrassed about it, but I do need to know if any of you or any members of your immediate family have been charged or convicted of a crime, a violation of the California penal code, a violation of a federal criminal statute making it a crime to conduct any offense. Raise your number cards."

*Id.* at 20-21. A few jurors explained their backgrounds concerning this issue, and then Judge Ware called on Porter, who stated the following: "It was me. I had a- I guess it was welfare fraud. I got food stamps over the amount I was supposed to receive. It was 25 years ago.  And that's what happened." *Id*. at 23. Judge Ware responded to Porter: "Those are the kinds of mistakes we live to regret.  But you've moved ahead. Thank you very much, Mr. Porter." *Id.* Judge Ware, the prosecutor, and Harmon's lawyer did not ask Porter any further questions about his prior convictions. *See generally* voir dire transcript. At no point during voir dire were the jurors informed that Harmon was a former prosecutor. *Id.* Porter subsequently was selected to serve on the jury and was ultimately the foreperson. Transc. at 48.

4

**C.      Evidentiary Hearings on April 1, 2011 and January 24, 2014**

On April 1, 2011, Judge James Ware held an evidentiary hearing on Porter's alleged juror misconduct. ECF No. 213. Porter testified under oath, answering various questions from counsel and the Court. *See generally id.* Before Porter testified, Judge Ware asked Porter if he would like to speak to a lawyer about the proceedings before he testified and offered to appoint Porter an attorney, *id.* at 4. Porter responded, "I've done nothing, so let's do this." *Id.* at 5. Later, Porter explicitly waived his right to have the Court appoint an attorney to represent him in the proceedings. *Id.* at 6-7.

On January 24, 2014, the undersigned judge held an evidentiary hearing on the issue of Porter's alleged juror misconduct. *See generally* Transc. Porter was present and testified under oath, answering various questions from counsel and the Court, again without the aid of a lawyer. *Id.* Before he testified, the Court asked Porter if he would like to speak with a lawyer before testifying and offered to appoint Porter a lawyer. *Id.* at 8. Porter responded, "I think I'll be okay. I didn't – I don't have anything to hide. I'm here to do the right thing." *Id.* When the Court noted that Porter should know that "a lawyer is available to [him] if [he] wanted to ask questions or consult with them," Porter responded, "I think I'm okay." *Id.* The Court further asked Porter whether he would like to review a copy of the transcript from the April 2011 evidentiary hearing before he testified, to which Porter responded, "No, Ma'am. I'm fine." *Id.* at 9. The Court followed up by asking if he would "like [his] own copy of the transcript?" to which Porter responded "Not particularly." *Id.*

Various exhibits were entered into evidence at the January 24, 2014 hearing, including: (1) Defense Exhibit 1: the transcript of the April 1, 2011 hearing; (2) Defense Exhibit 2: records from the matter of the *People of the State of California v. Mark Porter*, Case No. 112074, same as ECF No. 186, Exhibit C; (3) Defense Exhibit 3: a copy of the "juror questionnaire," same as ECF No. 172, Exhibit B; (4) Defense Exhibit 4: a copy of the "jury information form," same as ECF No. 172, Exhibit D; (5) Defense Exhibit 5: a copy of part of the "voir dire transcript," same as ECF No. 325; (6) Defense Exhibit 6: Mr. Porter's criminal record, same as ECF No. 186, Exhibit B; (7) Defense Exhibit 7: Oakland Tribune July 20, 2010 article titled "San Jose Defense Attorney

5

United States District Court
For the Northern District of California

1   Convicted on Five Money-laundering Counts"; and (8) Government Exhibit 1: record of Mr.

2   Porter's voter log.

**III.    LEGAL STANDARD**

4          Federal Rule of Criminal Procedure 33 allows a court to "vacate any judgment and grant a

5   new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33(a). The burden of justifying a

6   new trial rests with the defendant. *See United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir. 1986).

7   The decision to grant a new trial is within the sound discretion of the trial court. *See United States*

8   *v. Love*, 535 F.2d 1152, 1157 (9th Cir. 1976), *cert. denied*, 429 U.S. 847 (1976).

9          The Sixth and Fourteenth Amendments guarantee criminal defendants a verdict by

10  impartial, indifferent jurors, and the bias of even a single juror violates the right to a fair trial. *See*

11  *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998), *cert. denied*, 525 U.S. 1033 (1998).

12  "Accordingly, '[t]he presence of a biased juror cannot be harmless; the error requires a new trial

13  without a showing of actual prejudice.'" *Id.* (citation omitted). However, the United States

14  Constitution "does not require a new trial every time a juror has been placed in a compromising

15  situation." *Tinsley v. Borg*, 895 F.2d 520, 524 (9th Cir. 1990) (citation omitted). "Due process

16  means a jury capable and willing to decide the case solely on the evidence before it, and a trial

17  judge ever watchful to prevent prejudicial occurrences and to determine the effect of such

18  occurrences when they happen." *Id.* (citation omitted).

19         The Ninth Circuit "recognizes three forms of juror bias: (1) 'actual bias, which stems from

20  a pre-set disposition not to decide an issue impartially'; (2) 'implied (or presumptive) bias, which

21  may exist in exceptional circumstances where, for example, a prospective juror has a relationship

22  to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to

23  get on the jury'; and 3) 'so-called *McDonough*-style bias, which turns on the truthfulness of a

24  juror's responses on voir dire' where a truthful response 'would have provided a valid basis for a

25  challenge for cause.'" *United States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013) (citations

26  omitted).

27         Where "no motion was made during jury selection to dismiss the juror in question for cause

28  . . . [the defendant] must show that the evidence of partiality before the district court was so

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

1    indicative of impermissible juror bias that the court was obliged to strike [the juror] from the jury,

2    even though neither counsel made the request." *United States v. Mitchell*, 568 F.3d 1147, 1151 (9th

3    Cir. 2009).

4    **IV.    ANALYSIS**

5          Harmon seeks a new trial, arguing that Mark Porter was impermissibly biased against her.

6    Mot. 2 at 1. Harmon argues that Porter was actually biased, had implied bias against Harmon, and

7    that there was *McDonough*-bias. *Id.* at 2. In response, the government claims that Porter did not

8    harbor any form of bias against Harmon. Opp'n 2 at 3-8. For the reasons explained below, the

9    Court agrees with the government and finds that the record does not support Harmon's claim that

10   Porter was biased under the three theories of bias recognized in this Circuit.

11         **A.       Threshold Issue: Mr. Porter was in fact ineligible to serve on Harmon's jury**

12         Before analyzing the evidence regarding Porter's alleged bias, the Court first notes that the

13   record shows, and the government concedes, that Porter was in fact ineligible to serve on Harmon's

14   jury because he has a felony conviction and has not had his civil rights restored. Opp'n 2 at 2-3;

15   Mot. 2 at 4. Under 28 U.S.C. § 1865(b)(5), an individual who "has a charge against him for the

16   commission of, or has been convicted in a State or Federal court of record of, a crime punishable

17   by imprisonment for more than one year and his civil rights have not been restored" is ineligible to

18   participate on a jury. 28 U.S.C. § 1865(b)(5). In the State of California, an individual who has been

19   convicted of a felony offense and has not had his civil rights restored cannot serve on a jury. *See*

20   Cal. Code of Civ. Proc. § 203(a)(5) (1994). In order for an individual to have his rights restored

21   and thus restore his ability to serve as a juror, he must either obtain a certificate of rehabilitation or

22   be granted a pardon by the Governor. *See* Cal. Penal Code § 4852.01(a) (2011); *id.* § 4852.17

23   (2012). Here, while Porter has a felony on his record, there is no evidence that he received a

24   certificate of rehabilitation or pardon for this felony, and in fact at the hearing, Porter testified that

25   he "never applied for a pardon" or a certificate of rehabilitation, and never received a document

26   stating that his civil rights had been restored. Transc. at 21-22. Accordingly, the Court finds that

27   Porter was in fact legally disqualified from serving on Harmon's jury because his civil rights had

28   not been restored under California law at the time of Harmon's trial.

7

The fact that a disqualified felon served on Harmon's jury does not automatically invalidate the jury's verdict and require the Court to hold a new trial. 28 U.S.C. § 1865(b)(5) is a statutory bar as applied to prospective jurors, not a constitutional requirement required under due process principles. The Ninth Circuit has held that the Sixth Amendment of the United States Constitution is not necessarily violated by the presence on the jury of a statutorily disqualified felon. *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1059 (9th Cir. 1997) (holding that the participation of a felon-juror who is statutorily disqualified from serving "is not an automatic basis for a new trial" and that defendant must still show that the juror's participation resulted in "bias or prejudice" to one of the parties). Thus, in order to invalidate the jury's verdict, Harmon must demonstrate to this Court that Porter was biased against her.

**B.      Bias**

The Court now addresses Harmon's argument that Porter was impermissibly biased against her. As stated above, the Court finds that the record does not support Harmon's claim that Porter was biased under any of the three theories of bias recognized by the Ninth Circuit. The Court addresses each theory in turn.

**1.      Actual Bias**

The Court first analyzes Harmon's claim of actual bias. When an allegation of juror impartiality is raised after trial, the remedy is "a hearing in which the defendant has an opportunity to prove actual bias." *Dyer*, 151 F.3d at 990 (citation omitted). "Actual bias is, in essence, 'bias in fact'— the existence of a state of mind that leads to an inference that the person will not act with entire impartiality. Actual bias is typically found when a prospective juror states that he cannot be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view." *Mitchell*, 568 F.3d at 1151 (citation omitted). While actual bias may be revealed by a juror's explicit admissions, more typically it is demonstrated through circumstantial evidence. *Gonzales v. Wong*, 667 F.3d 965, 1111-12 (9th Cir. 2011). A defendant bears the burden of demonstrating actual bias. *United States v. Martinez-Martinez*, 369 F.3d 1076, 1081 (9th Cir. 2004).

8

United States District Court

For the Northern District of California

1     Here, the Court finds that there is no basis upon which to find that Porter was actually

2  biased against Harmon for the following reasons. Critically, Porter acknowledged that he "initially

3  voted [Harmon] not guilty" and that "[i]t was after several days before we changed our mind,

4  before I changed my mind." Transc. at 50. This statement suggests that Porter could not have

5  harbored any actual bias against Harmon.

6     Second, the Supreme Court has held that the assessment of juror bias is "essentially one of

7  credibility, and therefore largely one of demeanor." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984).

8  This Court asked Porter various questions at the hearing, and finds that Porter's answers were

9  credible and genuine and thus suggest that Porter was not biased against Harmon. For example,

10  when asked if he harbored any biases against any of the parties in the case, Porter said, "I did not."

11  Transc. at 54. When asked if he had any bias against Harmon because she was a former prosecutor,

12  Porter said, "No. I had – No." *Id.* When asked if he had any biases in favor of any party in

13  Harmon's trial, Porter said "[n]o I didn't." *Id.* at 55. When asked if he had "a special interest in

14  remaining as a juror in Ms. Harmon's trial," he said "No. [At the time of voir dire], I [thought I

15  would] miss[] two weeks of pay. In a courtroom full of people, no one wanted to be a juror, so I

16  just stood up for – I wanted to do my civic duty and not find an excuse not to do it. . . . This is the

17  same thing I told Judge Ware. I'm getting all this for trying to do the right thing. . . . I thought I

18  filled out the paperwork to the best of my knowledge as I understood it then. There's evidence here

19  now that I was wrong. All I wanted to do was the right thing." *Id.* at 54. Based upon an evaluation

20  of Porter's facial expressions, demeanor, and intonation while he was providing these answers, the

21  Court makes the credibility determination that Porter testified honestly, and thus finds as a matter

22  of fact that Porter did not harbor any actual bias against Harmon but rather simply wanted to carry

23  out his civic duty. This finding is supported by Porter's declination to review the 2011 hearing

24  transcript or to retain counsel at either evidentiary hearing in 2011 or 2014, as he had "[no]thing to

25  hide." Transc. at 8.[2]

26

27

28

---

[2] The Court notes that a cold reading of the 2014 evidentiary transcript does not necessarily convey the credible demeanor in which Porter answered the questions from counsel and the Court.

9

United States District Court

For the Northern District of California

1   Porter's answers to other questions also give the Court reason to believe Porter acted

2   impartially and followed the law as an unbiased juror should. When asked if he was "fair to all

3   sides" in Harmon's trial, Porter stated, "Extremely so. I made sure everyone had a turn to say what

4   they thought about the case, and I think from – [all the others jurors] told me I did a great job doing

5   it because I just – I wanted to be fair." *Id.* at 53. When asked if he "base[d] [his] verdict solely on

6   the evidence that was admitted during the trial," he stated, "solely on the evidence. That was – it

7   was a long trial, I remember a couple weeks long, I think. But yeah, [the jury] went over

8   everything." *Id.* When asked if he followed the law as Judge Ware instructed him to do so, Porter

9   said, "exactly." *Id.* at 54. Porter further claimed that throughout the trial, he "wanted to [keep an

10  open mind and be fair to all sides]," and that he indeed did that. *Id.* at 55-56; *United States v. AGE*

11  *Enterprises, Inc.*, 15 Fed. Appx. 439, 446 (9th Cir. 2001) (finding no juror bias where juror

12  reiterated in evidentiary hearing on juror misconduct that "she did not have any bias prior to the

13  trial and believed she could be fair and impartial"). The Court acknowledges that actual bias may

14  be demonstrated through circumstantial evidence, *Olsen*, 704 F.3d at 1189, but the Court finds no

15  such circumstantial evidence sufficient to support a finding of actual bias in this case.

16  Harmon's arguments to the contrary are unpersuasive. Harmon first argues that Porter has

17  been untruthful about his criminal history. She cites the jury information form, on which Porter did

18  not disclose his welfare fraud felony conviction. Mot. 2. at 1. She also cites how the juror

19  questionnaire, on which Porter admitted his felony conviction, incorrectly stated that his civil rights

20  had been restored. *Id.* Harmon also emphasizes that Porter did not reveal all his convictions and

21  charges during voir dire when asked by Judge Ware, but only revealed his 1994 welfare fraud

22  felony conviction. *Id.* at 1, 5. Last, Harmon contends Porter's testimony at the two evidentiary

23  hearings is inconsistent. Mot. 2 at 5-6. Harmon essentially sets forth the following theory of actual

24  bias: that Porter, a man with a lengthy criminal history who is unhappy with his experiences with

25  the criminal justice system, intentionally told these lies in order to "land a seat on the jury" and

26  thus convict Harmon, a former prosecutor, because he is biased against prosecutors. Mot. 2 at 1-2,

27

28

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

4-6.[3] Harmon's arguments fail to convince the Court that Porter was actually biased, for the reasons explained below.

Harmon's theory of actual bias fails first and foremost because the Court is not convinced that Porter actually harbored a bias against prosecutors. *Dyer*, 151 F.3d at 973. Critically, Harmon's theory that Porter was aiming to get on the jury in order to seek revenge against a former prosecutor is undermined by the fact that Porter was not even aware until *after* the trial began that Harmon was a former prosecutor, as this fact was not revealed during voir dire, which defense counsel conceded at the January 2014 hearing. *See* Transc. at 77 ("They talked [during voir dire] about her being a lawyer. They did not talk about her being a former prosecutor. That came out once trial began."); voir dire transcript at 37-150 (no mention of Harmon's status as a former prosecutor). Thus, it is simply not credible that Porter lied during voir dire to land a seat on the jury to seek revenge against a former prosecutor. Moreover, Porter testified that he initially voted Harmon not guilty and did not change his mind until several days of deliberations. Transc. at 50 (acknowledging that he "initially voted [Harmon] not guilty" and that "[i]t was after several days before we changed our mind, before I changed my mind.").

Furthermore, Harmon's argument that comments Porter gave to the Oakland Tribune after the trial demonstrates bias by suggesting that Harmon's former position as a prosecutor was "something that [was] relevant in [Porter's] decision-making" fails. *Id.* at 76; *see also* Mot. 2 at 2, 6-7 (arguing that Porter told the press in a post-trial interview that Harmon's status a prosecutor influenced his vote to convict). Porter specifically stated in a post-trial interview: "'I think what led people to the other side was as an experienced attorney with history and knowledge of the prosecutor side, she didn't act, she didn't get out . . . There were times she could have washed her hands of it, and didn't.'" Defense Exhibit 7. The Court finds that the fact that Harmon's status as a former prosecutor played a role in Porter's decision does not automatically mean Porter was biased against prosecutors. In fact, Porter's statement suggests not bias on Porter's part – i.e., that he

---

[3] At the January 24, 2014 evidentiary hearing, Harmon similarly argued that Porter's actual bias stems from the fact that Porter's "relationship to [the criminal] justice system is a fraught one . . . [he has] a long history of dealing with prosecution," he continued "to fight with his prior criminal history," and he is "sitting on a case where the defendant is a former prosecutor." Transc. at 75-76, 78.

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

United States District Court
For the Northern District of California

1 voted to convict Harmon as revenge on prosecutors – but rather demonstrates thoughtfulness by

2 suggesting he voted to convict Harmon in part because Harmon, as a former prosecutor, was more

3 likely to know that her actions were illegal and thus should have stopped participating in illegal

4 activity. *Id.* (Porter stating "she didn't act, she didn't get out . . . There were times she could have

5 washed her hands of it, and didn't.'"). Even defense counsel acknowledged that Porter's statement

6 to the press show that Porter "assign[ed] certain knowledge to Harmon as a former prosecutor that

7 he th[ought] ma[de] her more responsible than someone else would be." *Id.* at 78.

8        Finally, the Court notes that in response to defense counsel's question at the 2014 hearing

9 whether Harmon's status as a former prosecutor influenced Porter's "decision to vote to convict,"

10 Porter credibly responded, "No . . . "Why would it be? . . . Her role has nothing to do with it."

11 Transc. at 48, 50.

12        Harmon's theory of actual bias fails for a second reason. The Court is not convinced that, as

13 Harmon argues, Porter is "unreconciled to his past" and thus intentionally lied about his criminal

14 history to get on the jury, Mot. 2 at 6, as opposed to simply having suffered from a genuine lack of

15 memory or genuine confusion about his convictions and charges during voir dire. The Ninth

16 Circuit has held that courts "must be tolerant, as jurors may forget incidents long buried in their

17 minds, misunderstand a question or bend the truth a bit to avoid embarrassment. The Supreme

18 Court has held that an honest yet mistaken answer to a voir dire question rarely amounts to a

19 constitutional violation." *Dyer*, 151 F.3d at 973 (citing *McDonough*, 464 U.S. at 555-56). The

20 Court finds that Porter testified honestly when explaining at the hearing why he did not inform

21 Judge Ware during voir dire about his three convictions apart from his most recent 1994 welfare

22 fraud conviction. First, with respect to his reckless driving conviction in 1980, Porter testified that

23 he was under the impression that this conviction was a traffic violation, and thus that he genuinely

24 believed he did not need to raise this conviction because Judge Ware had stated that traffic

25 violations "didn't count." Transc. at 40; voir dire transcript at 20-21. Second, with respect to his

26 conviction for possession of a dangerous weapon in 1980, Porter testified he did not disclose it

27 because he didn't remember it, *see* Transc. at 43, and in any event, that he believed this charge had

28 been dismissed, *id.* at 40-42. This is not an implausible explanation given that Porter's criminal

United States District Court

For the Northern District of California

1    records show that his other charge for a similar crime in 1989, i.e., concealment of a dangerous

2    weapon, was in fact dismissed. ECF No. 186, Exhibit B at 3. With respect to Porter's

3    insufficient funds conviction in 1982, Porter testified that he did not disclose it during voir dire

4    because he "didn't remember it" because it was "30-some year ago." Transcr. at 43-44. The Court

5    finds that Porter's testimony that he did not have a clear recollection of his criminal record is

6    credible and plausible, especially given that he admitted to the Court that he had suffered from a

7    long-term cocaine addiction in the 1980s and 1990s. Transc. at 46, 52-53. Thus, the Court finds

8    that Porter indeed forgot, or at least had an unclear memory, or was confused regarding his

9    conviction for possession of a dangerous weapon in 1980 and his insufficient funds conviction in

10   1982.[4] Accordingly, the Court disagrees with Harmon's argument that Porter intentionally tried to

11   deceive Judge Ware by concealing the rest of his criminal history during voir dire and by stating on

12   the jury information form that he had not been convicted of any felonies.[5] [6]

13          This conclusion is further supported by the fact that Porter was not reluctant to note on the

14   juror questionnaire his most recent conviction from 1994 and even provided an explanation

15   regarding that conviction in the space allocated for explanation on the form. If Porter wanted to

16   conceal the fact that he had a felony conviction in order to ensure that he was able to serve on

17   Harmon's jury, he would not have revealed any conviction during voir dire and would not have

18   checked "yes" on the juror questionnaire with respect to whether he had a felony conviction. ECF

---

19   [4] The Court comes to the same conclusion regarding Porter's failure to disclose during voir dire his
20   six charges that did not lead to convictions. For example, Porter testified that he did not recall the
     probation violation for insufficient funds in 1982. Transc. at 45. He also testified he was never
21   charged for carrying a concealed weapon in 1989. *Id.* Given that the charge was in fact dismissed,
     it is plausible that Porter was genuinely confused about whether he was actually charged with the
22   crime. With respect to Porter's additional charge of insufficient funds in 1994 which was
     dismissed, Porter stated that he did not disclose this one because he "didn't remember it." *Id.* at 46.
23   [5] Harmon makes much of the fact that even though Porter revealed his 1994 welfare fraud
     conviction during voir dire, he nonetheless was dishonest by stating the conviction was nine years
24   older than it really was. Mot. 2 at 1, 9 (claiming Porter "lied about when that conviction took
     place" by stating it happened 25 years ago). Porter's oral misstatement regarding the date of this
25   conviction does not change the Court's conclusion, given that Porter quickly and genuinely
     accepted responsibility and conceded at the hearing that he "was wrong. I miscounted . . . I thought
26   it was longer." Transc. at 39.
     [6] The record does not reveal whether the 1980 and 1982 convictions were felonies or
27   misdemeanors, and the state court records have apparently been destroyed. *See* ECF No. 186,
     Exhibits B, C; Opp'n 2 at 6.
28
                                                        13

No. 172, Exhibit B. Porter's testimony at the January 2014 hearing also assures the Court that Porter attempted to fill out the various juror forms completely and honestly. *Id.* at 19 ("I knew there were some issues on there, so I tried to fill it out to the best of my knowledge. But there was some questions [about my conviction], so I think I put a note in there about what I had done."); *id.* at 54 ("I thought I filled out the paperwork to the best of my knowledge as I understood it then.").

Further, the record supports the inference that Porter was genuinely confused about how to fill out the two juror information forms. Porter's answers at the hearing suggest he was in fact genuinely confused about whether he had even lost his civil rights or about whether they were ever restored. For example, Porter testified that he did not know that his civil rights, apart from being able to purchase a weapon, had ever been taken away from him as a result of his 1994 felony conviction. *Id.* at 22 ("I didn't know that those rights had been taken in the first place, with the exception of being able to purchase a weapon."); *id.* at 19 ("I did not [know that my right to serve on a jury was one of the rights that's affected by the felony conviction."); *id.* at 26 ("I didn't receive any [paper] stating that [my civil rights] had been taken out").[7] Given Porter's testimony, the Court finds it more plausible that Porter inaccurately reported the status of his civil rights because he was actually confused about the status of those rights. Even Harmon concedes that Porter was confused regarding the status of Porter's civil rights. Mot. 2 at 6 ("[T]here is little doubt that Mr. Porter was confused [about whether his civil rights were restored.]"). Moreover, Porter's confusion is not surprising or implausible in light of how the issue of civil rights restoration under state law is not necessarily an easily understandable topic. Even Harmon's own lawyer at the 2011 evidentiary hearing, Tony Serra, admitted he was confused and mistaken regarding the status of Porter's civil rights. *See* April 2011 hearing transc. at 33-34 (apologizing to the Court for arguing earlier in the hearing that Porter was unable to vote due to his felony conviction because he now was informed "that in California . . . once you're either off parole if you got to prison, or off probation if you're given county jail and probation, you can vote. I was wrong.").

---

[7] This testimony is consistent with Porter's testimony at the April 2011 hearing before Judge Ware, in which Porter testified, "I know that my civil rights were never taken away, so I answered the question [] based on the fact that since I hadn't lost them in the first place, my assumption was I still had them," in response to a question about why he said on the juror questionnaire that his civil rights had been restored. April 2011 hearing transc. at 20.

14

Nor is the Court convinced by Harmon's assertion that Porter must have intentionally lied during voir dire because his testimony at the April 2011 hearing and the January 2014 hearing was inconsistent. Mot. 2 at 5. Harmon cites how Porter stated his 1994 welfare fraud conviction was a felony at the April 2011 hearing, but stated at the January 2014 hearing that he believed his conviction was just a misdemeanor with a "felony probation" term. Mot. 2 at 5; *id.* at 51-52 ("I think the five years [the judge] tacked on as a felony probation was what was keeping me from – you know, from it being just a plain misdemeanor."). However, Porter testified at the January 2014 hearing that he believed it was a misdemeanor because he heard a lawyer say at the end of the April 2011 hearing that it was. Transc. at 33 ("I heard [one of the lawyers] say that . . . this conviction was a misdemeanor . . ."). Even granting that Porter's testimony was inconsistent, the Court is not convinced that Porter intentionally lied at the January 2014 hearing, in light of his demeanor while testifying and given that Porter immediately accepted responsibility and acknowledged that his belief that his conviction was a misdemeanor was a mistake as soon as defense counsel showed him at the January 2014 hearing his criminal record which indicated that the conviction was in fact a felony. *Id.* at 33 (Porter answered the question, "it was a felony, right?," by stating, "You showed me the paperwork. Yes, it obviously was. But that was not my understanding at the time."); *id.* at 35 ("I'm looking at the papers. It's obviously a felony. I was wrong. I was mistaken about what the charge was."); *id.* at 37 ("The paperwork is here. I agree. It was a mistake on my part. I was wrong."); *id.* at 58 ("You have given me paperwork now that has changed my understanding. I was incorrect at the time."). Porter's quick concession that he was in fact wrong about the status of his conviction suggests that Porter was not trying to actively deceive the Court regarding the status of his conviction. Harmon also fails to explain why this inconsistency is even material to whether Porter intentionally lied to get onto Harmon's jury, given that Porter provided the correct response – that his crime was a felony – at the 2011 hearing, which was closer in time to Harmon's 2010 trial than the 2014 hearing, and even acknowledged on at least one juror form right before the trial that he had a felony conviction. The fact that Porter was confused about the status of his conviction as a felony or misdemeanor three and a half years after Harmon's trial has minimal probative value.

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

1    Moreover, the Court finds that Porter gave a plausible explanation as to why he believed his

2    conviction was a misdemeanor – i.e., he only served four months in jail for it and the common

3    conception "in the streets" is that a crime is a felony or misdemeanor based on the amount of time

4    actually served for the crime, as opposed to the maximum penalty that can be given for the crime.

5    *Id.* at 52 ("In the streets, if you do less than a year in county jail, it must be a misdemeanor because

6    anything over a year, you go to prison."). Furthermore, it is worth noting that under California law,

7    certain crimes are classified as "wobblers," which is a term of art used to designate crimes which

8    are not statutorily defined as either felonies or misdemeanors but can be charged by prosecutors as

9    felonies *or* misdemeanors. *Ewing v. California*, 538 U.S. 11, 16-17 (2003). Determining whether a

10   conviction of a wobbler is actually a felony or misdemeanor conviction could be quite confusing to

11   a lay person, in light of how California trial courts have discretion to reduce a "wobbler" charged

12   as a felony to a misdemeanor either before preliminary examination or at sentencing. Cal. Penal

13   Code Ann. §§ 17(b)(5), 17(b)(1); *People v. Superior Court of Los Angeles Cty. ex rel. Alvarez*, 14

14   Cal. 4th 968, 978 (1997). In light of these considerations, the Court finds it highly plausible that at

15   the January 2014 hearing Porter, a lay person, could in fact have been genuinely confused about

16   whether his crime had been charged as a felony or misdemeanor. *See McDonough*, 464 U.S. at 555

17   (observing that "jurors are not necessarily experts in English usage" and "may be uncertain as to

18   the meaning of terms which are relatively easily understood by lawyers and judges"); *Dennis v.*

19   *Mitchell*, 354 F.3d 511, 521 (6th Cir. 2003) (holding that juror's misunderstanding of a legal term

20   did not denote dishonesty).

21          In sum, because Harmon has failed to adequately support her theory that Harmon was

22   biased against prosecutors and that he intentionally lied to get on the jury for that reason, the Court

23   finds no basis upon which to find that Porter was actually biased against Harmon.

24                        **2.      Implied Bias**

25          The Court now addresses Harmon's claim that the Court should find implied bias in this

26   case. Even where actual bias has not been demonstrated, in rare instances courts will find implied

27   bias, which is "bias conclusively presumed as a matter of law." *Mitchell*, 568 F.3d at 1151 (quoting

28   *Gonzales*, 214 F.3d at 1111). The Ninth Circuit has cautioned that bias should be presumed only in

16

United States District Court

For the Northern District of California

1   "extreme" or "extraordinary" cases. *Id.* (citing *Tinsley*, 895 F.2d at 527). The Ninth Circuit has

2   recognized implied bias in only two contexts: first, "in those extreme situations 'where the

3   relationship between a prospective juror and some aspect of the litigation is such that it is highly

4   unlikely that the average person could remain impartial in his deliberations under the

5   circumstances,'" *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007) (en banc) (quoting *Gonzalez*,

6   214 F.3d at 1112), and second, "where repeated lies in voir dire imply that the juror concealed

7   material facts in order to secure a spot on the particular jury." *Id.* (citing *Dyer*, 151 F.3d at 982).[8]

8          Harmon asserts the second form of implied bias here, contending that the fact that Porter

9   lied during voir dire about his criminal history supports a finding of implied bias under *Dyer v.*

10  *Calderon*, 151 F.3d 970 (9th Cir. 1998) (en banc), and *Green v. White*, 232 F.3d 671 (9th Cir.

11  2000), two Ninth Circuit decisions that found implied bias based "on the pattern of lies [a] juror

12  engaged in to secure her seat on the jury." *Green*, 232 F.3d at 677; *see* Mot. 2 at 2, 8 (citing *Dyer*);

13  Transc. at 80 (arguing that under *Green*, the misrepresentations Porter made created "destructive

14  uncertainties" about his ability to serve as an impartial juror). Similar to his argument for a finding

15  of actual bias, Harmon argues that under *Dyer*, Porter's "eager[ness] to serve" compels a finding

16  that Porter harbored bias against Harmon and suggests that he must have lied in order to secure a

17  spot on the jury. Mot. 2 at 8 (citing *Dyer*). The Court rejects Harmon's argument.

18         First, the record suggests that Porter was a juror who was not intentionally lying to get on

19  the jury but rather was genuinely confused or forgetful about various aspects of his criminal

20  history. The Court finds credible Porter's statement that he wanted to serve on the jury only

21  because he thought that was the right thing to do. Transc. at 54 ("In a courtroom full of people, no

22  one wanted to be a juror, so I just stood up for – I wanted to do my civic duty and not find an

---

23  [8] In *Tinsley*, 895 F.2d at 520 (9th Cir. 1990), the Ninth Circuit discussed four general fact situations

24  where bias might be presumed or implied: (1) "where the juror is apprised of such prejudicial

25  information about the defendant that the court deems it highly unlikely that he can exercise

    independent judgment even if he states he will," *id.* at 528; (2) "[t]he existence of certain

26  relationships between the juror and the defendant," *id.*; (3) "where a juror or his close relatives

    have been personally involved in a situation involving a similar fact pattern," *id.*; and (4) "where it

27  is revealed 'that the juror is an actual employee of the prosecuting agency, that the juror is a close

    relative of one of the participants in the trial ... or that the juror was a witness or somehow involved

28  in the [underlying] transaction,' " *id.* (citation omitted). Although bias may be presumed or implied

    in other factual contexts as well, these general categories are "instructive." *Id.*

17

excuse not to do it."). Further, Harmon's suggestion that Porter lied because he was too "eager to serve," Mot. 2 at 8 (citing *Dyer*, 151 F.3d at 982), is unconvincing in light of how Porter testified that he believed at the time of voir dire that he would not be getting paid during his time on jury duty. Transc. at 54.[9] [10]

Even assuming *arguendo* that Porter was intentionally dishonest during voir dire, the Court finds that Porter's failure to disclose his entire criminal history during voir dire does not present the kind of extraordinary circumstances which warranted a finding of implied bias in *Dyer*, where implied bias was found where a juror had failed to disclose that her brother had been killed in a way which was highly similar to the way the defendant was accused of killing his victims. *Dyer*, 151 F.3d at 981-84. This case is also materially distinguishable from *Green*, a case in which "extraordinary" circumstances compelled a finding of implied bias where a juror had made a "pattern of misleading statements," and had lied "materially and repeatedly" in his jury questionnaire form, at voir dire, and in post-trial evidentiary hearings on the matter. *Green*, 232 F.3d at 672, 676-77. In *Green*, a juror had not disclosed his prior felony conviction for passing bad checks in his juror questionnaire, which under California law would have disqualified him to serve as a juror. *Id.* at 672. He also did not reveal his past assault conviction during voir dire when asked to reveal any prior assault charges. *Id.* at 673. When called upon to explain his behavior at a post-trial hearing, the juror gave manifestly self-contradictory explanations for his omissions, first asserting that his wife filled out his juror questionnaire by herself and later testifying that she filled it out step by step pursuant to his explicit directions. *Id.* at 672-73. The juror had also been involved in "several incidents" at trial which suggested he was biased; it was alleged by two other jurors that he said, during the trial, that he knew the defendant was guilty the moment he saw him and that he wished "the judge would let him go back to his place so he could get his piece" and shoot the defendant. *Id.* at 673-74. When questioned about these allegations at the post-trial

---

[9] Porter testified that he found out after being selected to be on the jury that he would be paid for jury service, but that at the time of voir dire, he thought he would not get paid. *Id.* at 55.

[10] The Court has other reasons to believe Porter was not aiming to serve on the jury. At the April 2011 hearing, Porter testified, in response to the question, "Were you trying to deceive [the Court] because you wanted to be on the jury," that he "would rather have not done two weeks of jury duty, okay? Just like everybody else." *See* April 2011 hearing transc. at 29.

18

United States District Court
For the Northern District of California

evidentiary hearing, the juror offered "a variety of responses" that, again, were self-contradictory. *Id.* at 672, 678. For instance, at first he stated he never said "I knew [the defendant] was guilty the moment [I] saw him" but later testified he did in fact make such a statement at the end of the trial. *Id.* at 673-74. The Ninth Circuit reasoned that the combination of the juror's statements at trial, the contradictions in his post-trial hearing testimony, and his lies at voir dire and on his juror questionnaire, "impeach[ed] [the juror's] impartiality." *Id.* at 673. Specifically, the Court held that the juror had "engaged in behavior that brings his impartiality into serious question, [which] provide[d] strong circumstantial evidence of his motive for lying: his stated desire to get a gun and kill Green himself; his statement that he knew Green was guilty from the moment he saw him; his statement to a friend that the wrong people receive too many rights; and his past 'investigation' activities, which, of course, he boasted about to the jury. All of these facts, considered as a whole, create 'destructive uncertainties' regarding [the juror's] ability to render a fair verdict." *Id.* at 678. Here, by contrast, the Court finds no "destructive uncertainties" about Porter's ability to render a fair verdict. There has been no showing that Porter engaged in any conduct or made any statements during trial or otherwise that suggests he was biased against Harmon. Neither in her motion nor at the hearing did Harmon present any compelling argument as to why the facts in this case are sufficiently analogous to *Dyer* or *Green* such that a finding of implied bias is warranted in this case.[11] Accordingly, the Court finds this case does not reach the level of "extraordinary circumstances" that warrant a finding of implied bias under Ninth Circuit law.[12] *Tinsley*, 895 F.2d at 527.

### 3. *McDonough*-bias

---

[11] The Court further notes that the mere fact that a juror has a prior felony conviction does not provide a sufficient basis to presume bias. *Young v. United States,* 694 A.2d 891, 896 (D.C.1997) ("[F]elon status, alone, does not necessarily imply bias.").

[12] The Court further notes that in other rare cases in which the Ninth Circuit has been willing to find implied bias, the circumstances were much more compelling than those in the instant case. *See, e.g.*, *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (implied bias found where juror in heroin conspiracy trial failed to disclose on voir dire that two of his sons were serving prison terms for heroin-related crimes); *United States v. Allsup*, 566 F.2d 68, 71-72 (9th Cir. 1977) (court found implied bias where two prospective jurors in a bank robbery trial were employees of the bank that was robbed, which created a substantial probability that they could not be impartial).

19

The Court now addresses Harmon's appeal to the third type of bias, "so-called *McDonough*-style bias," which occurs where two prongs are satisfied: a juror fails to answer honestly a material question on voir dire and "'a correct response would have provided a valid basis for a challenge for cause.'" *Fields*, 503 F.3d at 766-67 (quoting *McDonough Power Equipment, Inc.*, 464 U.S. at 556). The Ninth Circuit has held that a "voir dire question is material when the honest response would reflect bias, prejudice or partiality against a party." *See Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1061 (9th Cir. 1997). The Ninth Circuit has further held that "[u]nder *McDonough*, a new trial is warranted only if the district court finds that the juror's voir dire responses were dishonest, rather than merely mistaken, and that her reasons for making the dishonest response call her impartiality into question." *Pope v. Man-Data, Inc.*, 209 F.3d 1161, 1164 (9th Cir. 2000).

Whether a juror is dishonest is a question of fact, *Dyer*, 151 F.3d at 973, and there is no formula for identifying juror dishonesty under the first prong of the *McDonough* test. The Ninth Circuit has, however, provided some guidance on this point. To establish that Porter failed to answer a question honestly, Harmon must show that Porter's answers were *intentionally* untruthful. *See Price v. Kramer*, 200 F.3d 1237, 1254-55 (9th Cir. 2000) (no *McDonough* bias where "omissions constituted an innocent oversight."); *Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996) (emphasizing that first prong of the *McDonough* test "is directed at intentionally incorrect," rather than mistaken, responses). Forgetfulness and misunderstanding do not constitute dishonesty. *See United States v. Edmond*, 43 F.3d 472, 474 (9th Cir. 1994) (no juror misconduct where district court found juror's testimony that he forgot about being victim of armed robbery truthful); *Hamilton v. Ayers*, 583 F.3d 1100, 1107 (9th Cir. 2009) (no juror bias when omissions on voir dire were inadvertent, not intentional); *Dyer*, 151 F.3d at 973 (noting in context of *McDonough*-style-bias inquiry that even though jurors must answer voir-dire questions truthfully, courts should be mindful and "tolerant" that jurors may "forget incidents long buried in their minds, misunderstand a question or bend the truth a bit to avoid embarrassment").

Here, Harmon has not met her burden of proving *McDonough* bias because the Court is not convinced that Porter was *intentionally* dishonest or purposefully misled Judge Ware during voir

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    dire when he mentioned only his 1994 welfare fraud conviction and not his other three convictions

2    or the charges for which he was not convicted. The Court reaches this conclusion based on the

3    same analysis set forth above, *see supra* Part IV.B.1, where the Court set forth its credibility

4    determination that Porter has in fact been honest throughout the various proceedings in this case.

5    More specifically, Porter explained at the January 24, 2014 hearing that he did not disclose his

6    1980 reckless driving conviction during voir dire because he was under the impression that this

7    conviction was a traffic violation which Judge Ware said "didn't count." Transc. at 40. The Court

8    finds that Porter's failure to disclose that conviction was an honest mistake as opposed to the result

9    of an intentional decision to lie, just as it was in *McDonough*, where a prospective juror in a

10   personal injury action failed to respond affirmatively to a question on voir dire about previous

11   injuries to members of the juror's immediate family that resulted in disability or prolonged pain,

12   where in fact, the juror's son had broken his leg as a result of an exploding tire. *McDonough*, 464

13   U.S. at 548. The Supreme Court found that the juror's response was a mistaken, though honest,

14   response because the juror apparently did not believe that specific injury was relevant to the

15   inquiry. *Id.* at 555. With respect to Porter's failure to disclose his other two convictions, the Court

16   similarly finds, as set forth in Part IV.B.1, that these omissions do not reflect any intentional

17   dishonesty on Porter's part, but rather his genuine loss of memory about his past convictions. *See*

18   Part IV.B.1 ("The Court finds that Porter's testimony that he did not have a clear recollection of his

19   criminal record is credible and plausible, especially given that he admitted to the Court that he had

20   suffered a long-term cocaine addiction in the 1980s and 1990s."). Accordingly, because Harmon

21   has failed to prove the first prong of the *McDonough* test, Harmon's claim to *McDonough* bias

22   fails. *Martinez v. Food City, Inc.*, 658 F.2d 369, 374–75 (5th Cir. 1981) (proof that the juror in

23   question did not lie on voir dire renders "further inquiry . . . academic"); *see also Olsen*, 704 F.3d

24   at 1196 (where juror did not answer questions dishonestly there was "no basis for a *McDonough*

25   challenge").

26          The Court notes, as a final matter, that given that Harmon's lawyer did not challenge

27   Porter's eligibility to serve on the jury nor asked him any questions about his criminal history after

28   he revealed his welfare fraud conviction during voir dire, *see* voir dire transcript at 37-150,

Case No.: 08-CR-00938-LHK
ORDER DENYING DEFENDANT JAMIE HARMON'S MOTION FOR A NEW TRIAL

Harmon must meet a heightened standard to prevail in this motion. Where "no motion was made during jury selection to dismiss the juror in question for cause . . . [the defendant] must show that the evidence of partiality before the district court was so indicative of impermissible juror bias that the court was obliged to strike [the juror] from the jury, even though neither counsel made the request." *United States v. Mitchell*, 568 F.3d 1147, 1151 (9th Cir. 2009); *see also United States v. Ha*, No. 06-50623, 2010 WL 2994021, at *1 (9th Cir. 2010) (holding heightened standard applies where neither party objected during voir dire to the allegedly biased juror). For the reasons set forth above, the Court finds that Harmon has failed to meet this heightened standard, and thus her motion is denied.[13]

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES Harmon's motion for a new trial based on juror misconduct.

**IT IS SO ORDERED.**
Dated: February 28, 2014

_____
LUCY H. KOH
United States District Judge

_____

[13] Harmon argues that this heightened standard does not apply because it is premised on "cases in which a juror revealed the pertinent information during voir dire and the defendant nonetheless stood silent. . . . Those cases are inapposite, as Mr. Porter did not reveal the information on which to base a defense challenge." Mot. 2 at 9. This argument fails, as Porter did reveal certain information during voir dire, namely his 1994 welfare fraud conviction, which should have put Harmon's lawyer on notice that he may want to challenge Porter based on his criminal history. In any event, the Court notes that even if a heightened standard did not apply to this case, Harmon has not met her burden of showing bias under Ninth Circuit law.

22

**United States District Court**
For the Northern District of California