MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

SUSAN KNIGHT (CABN 209013)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5056
    FAX: (408) 535-5061
    E-Mail: Susan.Knight@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-00938 LHK |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: January 14, 2015 |
| JAMIE HARMON, | Time: 9:30 a.m. |
| Defendant. | Court: Honorable Lucy H. Koh |

### INTRODUCTION

On July 20, 2010, defendant Jamie Harmon (hereinafter "the defendant") was convicted after a trial of five counts of money laundering, in violation of 18 U.S.C. § 1956(A)(i)(b)(i). Sentencing is scheduled to take place on January 14, 2015 at 9:30 a.m. before this Court. The government submits the following sentencing memorandum in order to (1) discuss the applicable guideline calculations, and (2) advise the Court of its sentencing recommendation, taking into account the sentencing guideline range and other sentencing factors in 18 U.S.C. § 3553(a).

//

//

//

1

# DISCUSSION

## A.     The Legal Framework for Sentencing

The Ninth Circuit has provided the courts with the basic framework for engaging in the sentencing process. In United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008), the Court explained that "[t]he overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2)."

The starting place in the sentencing process is the determination of the applicable sentencing guideline range. Id. "While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." Id.  "The district court should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." Id. The district court "may not presume that the Guidelines range is reasonable," and "must an individualized determination based on the facts." Id.

As discussed below, the government has followed this framework in arriving at its sentencing recommendation in this case.

## B.     The Applicable Sentencing Guidelines

### 1.  The Guidelines Calculation

The government agrees with the sentencing guideline calculation contained in the Presentence Report ("PSR"), which is outlined below:

      a.    Base Offense Level:                16
(U.S.S.G. § 2S1.1(a)(2), base offense level is 8 plus
the amount of laundered funds pursuant to §2B1,1(b)(1)(E) - loss)
between $70,000 and $120,000)

      b.    Specific offense characteristics:      +2
(U.S.S.G. § 2S1.1(b)(2)(B) – defendant convicted of
18 U.S.C. § 1956)

      c.    Adjusted Offense Level:            18

An adjusted offense level of 18 when indexed with Criminal History Category I results in an

2

advisory guideline sentence of 27 to 33 months imprisonment.

**C.     Determination of the Appropriate Sentence in Light of the Applicable Guideline Range And the Factors in 18 U.S.C. § 3553(a)**

After considering the Sentencing Guidelines and factors outlined in 18 U.S.C. § 3553(a), the government recommends that the Court impose of sentence of 30 months to be followed by three years of supervised release. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

### 1. The Nature and Circumstances of the Offense

In terms of the nature of circumstances of the offense, there is no question that the offense here is very serious. The offense conduct is accurately described in the PSR, and the Court is familiar with the facts of the case. PSR, ¶¶ 7-20. The defendant, who was an experienced criminal attorney, offered to accept two checks issued to Silicon Valley Resale totaling over $127,000 from her client, Christian Pantages. She was well aware of the illegal nature of the checks as evidenced at trial by the testimony of Christian Pantages, Ingrid Harry, Yan Ebyam, and Assistant Deputy District Attorney James Sibley. See RT 930-34; 967-70; 721-35; 558-562; 572-573; 577. Such egregious conduct warrants a lengthy custodial sentence.

### 2. The History and Characteristics of the Defendant

The PSR details that the defendant had a tough upbringing. She was subjected to emotional and physical abuse by her father, and her father physically abused her mother. PSR, ¶¶ 48-49, 53. Despite her difficult childhood, the defendant excelled academically by being an honor student in high school, obtaining a Bachelor of Arts degree in psychology from Reed College and a law degree from Santa Clara University. PSR, ¶¶ 76-78. She also had a career as a Deputy District Attorney with the Santa Clara District Attorney's Office and operated her own law firm for over a decade. PSR, ¶¶ 82-83. Furthermore, she has no criminal history, has a supportive family, and acted as caretaker for a friend who suffered from a terminal illness. PSR, ¶¶ 40, 60-61.

The government has two areas of concern that are inconsistent with the positive circumstances discussed above. First, the defendant has never accepted any responsibility for the instant offense. She did not discuss the offense with the Probation Officer nor did she submit a statement for the PSR.

Instead, the defendant informed the Probation Officer that her use of Vicodin, which was prescribed in 2003, contributed to the offense. PSR, ¶ 73. She has not provided an explanation about how the drug allegedly contributed to her crime and she has not provided any medical documentation regarding her use of the drug during the Fall of 2003.

Second, the government is concerned about the defendant's actions as an attorney prior to her suspension from the State Bar of California and after her conviction in July 2010. The government recognizes that the State Bar, during a secondary review of her conduct in May 2010, found that her "misconduct primarily involved mismanagement of her practice, not dishonesty or moral turpitude." PSR, ¶ 82. However, at least in one instance, the defendant made false representations to a Superior Court Judge in a matter involving client funds. In January 2010, an individual identified by the initials "S.M." hired the defendant to represent two brothers, identified by the initials "J.L." and "R.L." in two separate matters.[1] "J.L." was a minor, and his guardians were "D.B." and "C.B." with "S.M." was a proposed successor guardian. The defendant agreed to represent "J.L." for a $15,000 fee and "R.L." for a $30,000 fee. See Attachment A, State Bar Complaint and Attachment B, State Bar Memorandum.

In February 2010, before the defendant was suspended by the State Bar of California, she convinced a Superior Court Judge in Monterey County to release $45,000 that was in a locked account to pay for "J.L.'s" legal fees. The minor was accused of attempted murder, and his deceased mother left the money for him. The defendant informed the Superior Court Judge that the funds were to be used towards a flat fee for the representation of "J.L." in a criminal matter. See Attachment C, Superior Court Transcript, at p. 3-4. She never informed the Superior Court Judge that she was charged with money laundering and going to trial in Federal Court. In addition, she failed to inform the Superior Court Judge that the funds were also to be used to defend "R.L.," who was accused of attempted murder in a separate case. The funds were released and "S.M." withdrew $45,000 to pay the defendant. See Attachment B.

After the defendant's conviction, and while on inactive status, the defendant signed a declaration on April 22, 2011 informing the Superior Court Judge that she had been convicted of money laundering in Federal Court, and suspended by the State Bar of California. She also provided an accounting of the

---

1 The government has redacted the names of the individuals from the documents, and will provide unredacted copies to the Court and defense counsel.

4

funds that were used in "J.L.'s" criminal case. In the accounting, she misrepresented the fact that "J.L's" funds were used only for his defense. See Attachment D, Declaration and Superior Court File. The defendant, on October 9, 2012, submitted a letter through her attorney to the State Bar of California confirming that the funds were to be used for both cases. See Attachment E, Letter.

The defendant's conduct, at least in this situation, demonstrates that her lack of respect for the law. Accordingly, the government submits that a custodial sentence is justified.

### 3. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment and Deterrence

The government strongly believes that a substantial sentence of imprisonment - 30 months - is necessary in order to reflect the seriousness of the offense, promote respect for the law, and provide deterrence. There is no question that the defendant has already suffered from her actions by losing her license to practice law. Nonetheless, a custodial sentence is warranted to reflect the gravity of the offense, especially in light of the defendant's experience for nearly three decades as a criminal lawyer.

Coupled with this is the fact that it is imperative that the Court convey to the legal community that it will not tolerate attorneys who abuse their client-trust accounts and will severely sanction such conduct. A custodial sentence will promote respect for the law and likely deter attorneys who consider engaging in illegal conduct. In addition, a custodial sentence will show the non-legal community that the Court will punish attorneys who commit criminal offenses.

### CONCLUSION

In full consideration of the defendant's history and characteristics together with the other goals of sentencing, the government respectfully requests that the Court sentence the defendant to 30 months imprisonment followed by three years supervised release. The government has reviewed the defendant's financial situation as outlined in the PSR and defers to the Probation Officer's request that the defendant has the ability to pay a $6,000 fine. If the Court finds that the defendant does not have the ability to pay

//
//
//
//

1 a fine, the government requests the Court require the defendant to complete 300 hours of community
2 service. The Court is required to impose a $500.00 special assessment.

3 DATED: 1/7/14                              Respectfully submitted,

4                                            MELINDA HAAG
                                             United States Attorney
5
                                             /s/
6                                            SUSAN KNIGHT
                                             Assistant United States Attorney